No. 25-2053

IN THE UNITED STATES COURT OF
APPEALS FOR THE FOURTH CIRCUIT

ROGER CHARLES DAY, JR.,
Plaintiff/Relator-Appellant,
and
UNITED STATES OF AMERICA *ex rel*. ROGER CHARLES DAY, JR.
Plaintiff,

v.

UNITED STATES OF AMERICA,
Plaintiff/Intervenor-Appellee,
and
BOEING; RAYTHEON; LOCKHEED MARTIN; GENERAL DYNAMICS; and NORTHROP GRUMMAN,
Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

# BRIEF FOR APPELLEE THE UNITED STATES

TODD W. BLANCHE
*Deputy Attorney General*

ROBERT P. MCINTOSH
*Assistant United States Attorney*
*(804) 819-7404*
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, VA 23219

## TABLE OF CONTENTS

INTRODUCTION........................................................................................1

STATEMENT OF JURISDICTION ..................................................................2

STATEMENT OF THE ISSUES ......................................................................3

STATEMENT OF THE CASE .........................................................................4

SUMMARY OF ARGUMENT .......................................................................12

STANDARD OF REVIEW ............................................................................15

ARGUMENT..............................................................................................16

I. THE DISTRICT COURT PROPERLY GRANTED THE UNITED STATES' MOTION TO DISMISS UNDER SECTION 3730(C)(2)(A) WHERE RELATOR WAS GIVEN NOTICE AND A HEARING AND OTHERWISE WAS NOT DEPRIVED OF DUE PROCESS. ..........................................................166

1. Relator Asserted No "Colorable Claim" of a Due Process Violation......................................................................18

2. Relator Received Notice of the Motion to Dismiss and Received a Hearing. ..................................................200

II. THE ATTORNEY GENERAL IS NOT REQUIRED TO PROVIDE "WRITTEN CONSENT" WHEN DISMISSAL IS PURSUANT TO SECTION 3730(C)(2)(A)...............................222

III. THE DISTRICT COURT SHOULD BE AFFIRMED ON THE ALTERNATIVE BASIS THAT THE COMPLAINT FAILED TO ALLEGE WITH THE PARTICULARITY REQUIRED BY FED. R. CIV. P. 9(B) THAT THE GOVERNMENT WAS A VICTIM OF FRAUD. ..........................................................................255

IV. THE DISTRICT COURT PROPERLY DENIED RELATOR'S MOTION TO REMOVE THE UNITED STATES AS A PARTY

AND THE ATTORNEY GENERAL AS COUNSEL. ...............288

CONCLUSION ...............................................................................................344

## TABLE OF AUTHORITIES

### Cases

*Board of Regents v. Roth*, 408 U.S. 564 (1972) .............................................. 18, 21

*Borzilleri v. Bayer Healthcare Pharm., Inc.*, 24 F.4th 32 (1st Cir. 2022).. 15, 23, 24

*Chang v. Children's Advocacy Ctr. of Del.*, 938 F.3d 384 (3rd Cir. 2019)............15

*Correspondent Servs. Corp. v. First Equities Corp. of Fla.,* 338 F.3d 119 (2nd Cir. 2003) ..........................................................................................................15

*Holland v. Big River Mins. Corp.*, 181 F.3d 597 (4th Cir. 1999)...........................28

*Hyde v. Hoffmann–La Roche, Inc.*, 511 F.3d 506 (5th Cir. 2007)..........................15

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980).......................................................32

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ............................................................21

*Minotti v. Lensink*, 895 F.2d 100 (2nd Cir. 1990) (per curiam) .............................23

*Muth v. United States*, 1 F.3d 246 (4th Cir. 1993)..................................................28

*Nat'l Wildlife Fed.,* 899 F.2d 313 (4th Cir. 1988) ..................................................28

*Plyer v. Moore*, 100 F.3d 365 (4th Cir. 1996) ........................................................19

*Siena Corp. v. Mayor & City Council of Rockville Maryland*, 873 F.3d 456 (4th Cir. 2017) ..................................................................................................18

*Singleton v. Wulff*, 428 U.S. 106 (1976) ................................................................28

*Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810 (4th Cir. 1995).....................19

*Talley v. Folwell,* 133 F.4th 289 (4th Cir. 2025) ....................................................19

*Touby v. United States,* 500 U.S. 160 (1991) .........................................................22

*United States ex rel. Doe v. Credit Suisse AG*, 117 F.4th 155 (4th Cir. 2024).. ............................................................................................................ *passim*

*United States ex rel. Jackson v. Ventavia Research Group, LLC,* 744 F. Supp. 3d 676 (E.D. Tex. 2024) ....................................................................................29

*United States ex rel. Nathan v. Takeda Pharmaceuticals N. Amer., Inc.*, 707 F.3d 451 (4th Cir. 2013)..........................................................................................27

*United States ex rel. Owens v. First Kuwaiti General Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) .......................................................................26

*United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023) ........................................................................................................ *passim*

*United States ex rel. Smith v. Clark/Smoot/Russell*, 796 F.3d 424 (4th Cir. 2015).26

*United States ex rel. Szymoniak v. American Home Mortgaging Serv., Inc.*, 679 F. App'x 299 (4th Cir. 2017) (per curiam)..............................................................26

*United States ex rel. Taylor v. Boyko*, 39 F.4th 177 (4th Cir. 2022) .......................26

*United States ex rel. Ubl v IIF Data Solutions,* 650 F.3d 445 (4th Cir. 2011)........11

*United States ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472 (4th Cir. 2025) ...........................................................................................................26

*United States v. Giordano,* 416 U.S. 505 (1974).............................................. 22, 23

*United States v. Sigillito*, 759 F.3d 913 (8th Cir. 2014) .........................................30

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)......... 30, 31

**Statutes**

28 U.S.C. § 1291 .........................................................................................................3

28 U.S.C. § 1331 .........................................................................................................2

28 U.S.C. § 509-510, 516 ........................................................................................31

28 U.S.C. § 510...........................................................................................................23

28 U.S.C. § 514...........................................................................................................15

28 U.S.C. § 515 .....15

28 U.S.C. § 516 .....15

28 U.S.C. § 517 .....15

28 U.S.C. § 518(b) .....15

31 U.S.C. § 3729 ..... 1, 2, 4, 25

31 U.S.C. § 3730 ..... *passim*

31 U.S.C. § 3739(b)(1).....11

**Rules**

28 C.F.R. § 0.45 .....23

**Other Authorities**

Civil Directive 1-15(b)(4) and (c)(1) contained in the Appendix to Subpart Y, Part 0 (28 C.F.R.) .....23

## INTRODUCTION

The False Claims Act (FCA) 31 U.S.C. § 3729 *et seq*., permits private individuals to enforce its provisions by filing civil actions on behalf of the United States Government alleging that a defendant has defrauded the federal government. Through such civil actions, known as *qui tam* lawsuits, these individuals—known as relators—may seek monetary recoveries on behalf of the Government. The Government may intervene and take over litigation of the action after receiving the complaint and the relator's material evidence and information. 31 U.S.C. 3730(b)(2)-(4), (c)(1). If the Government declines to intervene, the relator may conduct the litigation, but the FCA does not leave such suits entirely in the hands of relators, who do not always make litigation choices that are in the Government's interests. Rather, Congress reserved to the Attorney General several important powers, including authority to "dismiss the action notwithstanding the objections" of the relator. 31 U.S.C. § 3730(c)(2)(A).

The Government exercised that authority here by intervening and filing a motion to dismiss Relator's qui tam action before an answer or motion for summary judgment was filed. Relator brought the action nominally on behalf of the Government and in the Government's name, but the gravamen of his claim is his disagreement with the Government's method for purchasing parts, alleging that the

Defense Logistics Agency (DLA) improperly awarded contracts to the named defendants. The FCA is not a vehicle to resolve that disagreement.

Relator opposed the motion to dismiss and filed a motion to remove the United States as a party and the Attorney General as counsel based on his claim that the United States had a "conflict of interest" in prosecuting the action based on nothing more than his disagreement with DLA's use of an internet bidding system he claims is unlawful and violates the FCA. According to relator, this purported "conflict" deprived him of substantive due process. The District Court correctly determined a conflict of interest simply did not exist (JA 161-162, JA 203), that relator's due process rights had not been infringed. JA 198, JA 200, and that (c)(2)(A)'s notice and hearing requirements were satisfied.

This Court should affirm the District Court's dismissal of Relator's action and denial of his removal motion.

## STATEMENT OF JURISDICTION

Relator brought this *qui tam* action on behalf of the United States Government under the FCA, 31 U.S.C. §§ 3729 *et seq*. The District Court had jurisdiction under 28 U.S.C. § 1331. The District Court granted the Government's motion to dismiss and denied Relator's motion to remove the United States as a party and the Attorney General as counsel for the Government on March 31, 2025 (JA 118); and denied

Relator's motion to amend the judgment pursuant to Fed. R. Civ. P. 59(e) on August 21, 2025. JA 252. Relator filed a timely notice of appeal on August 29, 2025. JA 6. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the District Court correctly granted the Government's motion to dismiss this FCA action under 31 U.S.C. § 3730(c)(2)(A), where Relator was afforded notice and a hearing on the Government's motion and otherwise has not been deprived of due process.

Whether the District Court correctly found that dismissal pursuant to 31 U.S.C. § 3730(c)(2)(A) does not require the Attorney General to submit a written statement of reasons as set forth in § 3730(b)(1), a provision of the False Claims Act that addresses dismissal under different circumstances and is inapplicable here.

Whether the District Court correctly found in the alternative that Relator's complaint could be dismissed for failure to satisfy the pleading requirements of Fed. R. Civ. P. 9(b).

Whether the District Court correctly denied Relator's motion to remove the Attorney General and Department of Justice as counsel for the United States based on alleged conflict of interest.

## STATEMENT OF THE CASE

### A. Statutory Background.

The False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, authorizes a private person, known as a relator, to file a civil action "for the person and for the United States *Government*" against any person who knowingly presents a false or fraudulent claim for payment to the Government. 31 U.S.C. §§ 3729(a), 3730(b)(1) (emphasis added). A *qui tam* action is brought "in the name of the Government." *Id*. Section 3730 of the FCA contains the provisions authorizing *qui tam* suits.

After receiving the complaint and supporting disclosures, the Government may elect to intervene and proceed with the action. 31 U.S.C. § 3730(b)(2)–(4). If the Government intervenes, it "shall have the primary responsibility for prosecuting the action." *Id.* § 3730(c)(1). Even if the Government initially declines to intervene, and allows the relator to litigate the action, the Government may intervene later upon a showing of good cause. *Id.* § 3730(c)(3).

The Government is a real party in interest in every FCA action, including those prosecuted by a relator. *See United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419, 425 (2023). The FCA provides that the Government may dismiss a *qui tam* action notwithstanding the relator's objection, provided the relator receives notice and an opportunity for a "hearing." 31 U.S.C.

§ 3730(c)(2)(A). If the action results in recovery, the relator is entitled to a statutory share of the proceeds absent any statutory bar. *Id.* § 3730(d).

B. Factual Background and District Court Proceedings.

1. The Complaint.

Relator filed this action on behalf of the Government under Section 3730(b). JA 8. The complaint named as defendants The Boeing Company, Lockheed Martin Corporation, Raytheon Technologies Corporation, General Dynamics Corporation, and Northrop Grumman Corporation. JA 9. The complaint alleged that these companies sell proprietary replacement parts to the Department of Defense through the Defense Logistics Agency's Internet Bid Board System ("DIBBS"). *Id.*

The complaint alleged that DLA improperly awards contracts to the defendants for certain parts using a "purported" competitive bid process when "in fact the [defendants are the] Sole Source of these parts." JA 9, ¶¶ 5-7. Relator asserted that DLA's use of that procurement method renders contracts awarded through the DIBBS system "false claims" for purposes of the FCA. JA 9, JA 10. The complaint alleged that the challenged procurements were made at the request, and with the full knowledge, consent and participation of the DLA. JA 10, JA 11, at ¶¶ 9, 11, 13, 18.

The complaint did not identify specific contracts, particular claims for

payment, or specific misrepresentations made by any defendant. JA 9-12. Nor did it identify any individual employee alleged to have engaged in fraudulent conduct. *Id.* Relator did not allege that defendants have defrauded or provided false, inaccurate, or even misleading information to DLA. *Id.* In fact, Relator alleged that DLA contracting officers "work[ ] with the Defendants" *and "know[ ]"* of the method by which DLA acquires the parts. JA 11 ¶ 17 (emphasis added). Relator thus argued that the DIBBS process itself was being used unlawfully by DLA, and critically, he alleged "DLA knows this." *Id,* ¶ 18. Furthermore, Relator did not identify in his complaint or disclosure of material evidence the names or identity of any Defendant contractor employee or DLA employee who he alleged engaged in false or fraudulent conduct, nor even differentiated among any of the five defendants. JA 9-12. Neither did Relator assert false claims with respect to any particular procurement. *Id.*

The District Court summarized the allegations as asserting that the defendants were complying with the procurement process as structured by DLA. As succinctly summarized by the District Court, "[A]ll the alleged facts suggest that the Defendants are simply complying with the contract bidding process exactly as requested by the DLA. This is the quintessential example of 'the contractor [doing] what the government told it to do.'" JA 211.

2. <u>The Government's Intervention and Motion to Dismiss</u>.

After investigating the allegations and materials submitted by Relator, the Government elected to intervene for the purpose of seeking dismissal. The Government filed a notice of intervention (JA 26) and simultaneously moved to dismiss the complaint pursuant to Section 3730(c)(2)(A). JA 15.

At the time the motion was filed, no defendant had filed an answer or a motion for summary judgment. JA 22. The Government argued that dismissal was appropriate under Section 3730(c)(2)(A), consistent with *Polansky*, and under Rule 41 of the Federal Rule of Civil Procedure. *Id* More specifically, the Government explained that, following investigation, it had determined that the allegations lacked merit, that the complaint did not allege actionable false claims, and that dismissal was commensurate with the public interest and the efficient use of governmental resources. JA 21, JA 22, JA 24.

Relator did not initially respond to the Government's motion to dismiss, and the District Court entered an order dismissing the action. JA 2. Relator then moved for relief from that order under Rule 60. *Id.*

The District Court granted reconsideration in part, scheduling a hearing on the Government's motion to dismiss. JA 45. Relator subsequently filed an additional motion to remove the United States as a party and to disqualify the Attorney General

and the Department of Justice from representing the Government. JA 47, JA 54. The Government filed a supplemental memorandum in support of dismissal, JA 57, setting forth the Government's reasons for dismissing the action (JA 61-62), explaining that Relator's complaint merely takes issue with DLA's acquisition methods (JA 65-68), explaining why the complaint utterly failed to state a claim under the FCA (JA 68-70), describing why DLA's actions were legal (JA 65-70), and explaining why dismissal was in the public interest. JA 71-74. Both motions were fully briefed (JA 76, JA 85, JA 92, JA 104, JA 111), and the District Court conducted a lengthy, in-person hearing addressing both the motion to dismiss and the motion to remove. JA 253-350.

3. The District Court's Decision

Following the hearing, the District Court entered an order denying Relator's motion to remove the United States as a party and the Department of Justice as counsel for the Government and granting the Government's motion to dismiss. JA 118.

In denying Relator's motion to remove, the District Court concluded that neither any statutory provision or judicial decision, JA 141, nor anything in the history or intent of the FCA, JA 156-157, authorizes the removal of the United States as an intervenor-plaintiff. As the District Court put it:

> To allow [Relator] to remove the United States because of disagreements in litigating strategy, a purported conflict of interest, or <u>for any other reason</u>, would not only undermine but would fly directly in the face of what Congress has done since 1863. . . . [It] would allow a relator to make decisions about litigation that squarely impact the interests of the United States without giving the United States power to influence that litigation as Congress intended by weakening relators' powers at the expense of expanding the United States' powers.

*Id.* (emphasis in original).

Citing both statutory and case law holding that the Attorney General is vested with plenary power over all litigation to which the Government is a party, the District Court also denied the motion to remove the Attorney General as counsel for the Government. JA 172, JA 173. Federal "statutes preclude the possibility of removing the DOJ as legal counsel to the United States in this action." JA 173. The District Court summarized by stating that "[Relator] has identified, and the [District Court] has found, no exception to contravene [the] reality" that the Attorney General is vested with plenary power over all litigation to which the United States or one of its agencies is a party. JA 172-73. Further, the District Court held that it could not "remove the DOJ as the United States' legal counsel in this *qui tam* action, [because to do so] would effectively strip the Executive Branch of any control in prosecuting the action that is brought in its name" in violation of constitutional separation of powers. JA 176. The District Court held that "a conflict of interest does not exist either because the United States is a party or because the DOJ is representing the

United States in the action." JA 200.

On March 31, 2025, the District Court granted the Government's motion to dismiss. JA 118. The District Court held that the Government's motion satisfied the requirements of *Polansky* and this Court's decision in *United States ex. rel. Doe v. Credit Suisse*, 117 F.4th 155 (4th Cir. 2024), by articulating reasons for dismissing the case under Section 3730(c)(2)(A). The District Court stated that the Government provided "a strong argument that the DLA's procurement practices are, in fact, legal," JA 195, and that the justifications articulated by the Government "mirror, and in many respects, are identical to, the reasons that the Supreme Court and Fourth Circuit found sufficient to dismiss the relators' claims in *Polansky* and *[Credit Suisse]*." JA 196.

The District Court also cogently rejected Relator's position that dismissal would "violate his substantive due process rights," explaining that Relator was granted a hearing, and noting as follows:

> At that hearing, counsel for both parties agreed that the hearing satisfied Polansky's hearing requirements for voluntary dismissal motions under Section 3730(c)(2)(A) and Rule 41(a)(1). Therefore, the court can and will dismiss this case without violating [Relator's] constitutional rights. . . . It is enough to conclude that the requirements of Polansky have been satisfied.

JA 198. *See* JA 344, JA 345.

The District Court also identified alternative grounds for dismissal. The

District Court held that the complaint did not allege sufficiently particularized facts to show that the Defendants violated the FCA. JA 209. The Court cited Relator's failure to plausibly allege that: "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) caused the government to pay out money or to forfeit moneys due." JA 206. Rather, Relator alleged "that the Defendants are simply complying with the contract bidding process exactly as required by the DLA," which "is the quintessential example of 'the contractor doing what the government told it to do,'" JA 209 (quoting *United States ex rel. Ubl v IIF Data Solutions,* 650 F.3d 445, 453 (4th Cir. 2011)). The District Court concluded that because the complaint fails to allege "'what' false claims occurred, 'who' made them, and 'when' those purported false claims were made to the DLA," JA 212, the complaint must be dismissed for failure to state a claim with particularity as required by Rule 9(b), Fed. R. Civ. P. JA 210.

Relator filed a motion for reconsideration, JA 214, contending that dismissal was improper because the Attorney General *herself* had not personally endorsed a written consent to dismissal as described in Section 3739(b)(1). JA 216. The District Court denied this motion on August 21, 2025, JA 252, noting that Relator's request "that the Attorney General alone—and no one else—must provide her written consent, with reasons, . . . is a peculiar one[,] . . . not only strange but is, in fact,

contradictory to the position that [he] took in the REMOVAL MOTION, which sought the removal of the United States as a party and, not just the DOJ as the Government's legal counsel, but so too the Attorney General herself." JA 240-241. In denying the motion, the District Court cited the "well-established principle of statutory interpretation that where there is 'conflict between a general provision,' such as Section 3730(b)(1), 'and a specific provision,' such as Section 3730(c)(2)(A), 'the specific provision prevails.'" JA 246. Citing *Polansky* and *Credit Suisse*, the District Court reiterated that dismissal was proper.

This appeal followed.

## SUMMARY OF ARGUMENT

This appeal rests on a fundamental misunderstanding of the False Claims Act. As the Supreme Court explained in *Polansky*, although relators are permitted to file *qui tam* actions, they act at all times "in the name of the Government" for an "injury . . . [that] is exclusively to the Government," and the suit remains at all times "one to vindicate the Government's interests." *Polansky*, 599 U.S. at 424-25, 435 (quoting 31 U.S.C. § 3730(b)(1)). As a real party in interest, the Government has the right to receive "the lion's share of any recovery" and retains significant rights to control the litigation brought in its name, including the right to intervene after the seal period ends upon a showing of good cause, and to dismiss the *qui tam* action over the

relator's objections. *Id.*, at 425-26.

In *Polansky*, the Supreme Court held that Federal Rule of Civil Procedure 41(a) provides the applicable standard for review for motions to dismiss brought by the Government under Section 3730(c)(2)(A) of the FCA. *Polansky*, 599 U.S. at 435-36. The Court explained that where the Government has intervened and moves to dismiss prior to the filing of an answer or summary judgment motion, "Rule 41 *entitles* the movant to dismissal; the district court has *no adjudicatory role*." *Id.*, at 436 n.4 (emphasis added). This Court has held the same. *See United States ex rel. Doe v. Credit Suisse AG*, 117 F.4th 155, 161 (4th Cir. 2024) ("[w]here the dismissal happen[s] at the pre-answer, pre-summary judgment stage, during which Rule 41(a)(1) applies, . . . no court order [is] required . . . [and] a district court 'has no adjudicatory role' in deciding a Rule 41(a)(1) dismissal" and "'Rule 41 *entitles* the movant to a dismissal'") (quoting *Polansky*) (emphasis added). In that procedural posture, unless a relator credibly alleges that dismissal would violate "bedrock constitutional constraints on Government action," a district court must grant the Government's (c)(2)(A) motion. *Polansky*, 599 U.S. at 436 & n. 4 (quotation marks omitted). Here, the District Court conducted an exhaustive in-person hearing after the filing of cross-motions for dismissal and removal, and full briefing, and found no constitutional concerns.

On appeal, Relator contends that DOJ has a conflict of interest created by its role insofar as the qui tam action takes issue with DLA procurement decisions that DOJ "defends," thereby requiring DOJ's removal. He does not allege any personal conflict of interest on the part of counsel for the Government. Instead, these arguments boil down to the same complaint: the Government's views as to the appropriate method for awarding the parts contracts at issue differ from his own. Relator's purported "conflict of interest" is not supported in case law or statute and provides no basis to remove government counsel. Nor does the purported conflict amount to a due process violation. In fact, Relator received *more* process than he was due because his complaint was dismissed only after extensive briefing and an in-person hearing.

Relator argues further that dismissal should be reversed because the Attorney General did not personally submit a statement of the Government's reasons for seeking dismissal. This argument invokes a different and inapplicable section of the False Claims Act, not Section 3730(c)(2)(A), and it should be rejected.

Relator contends that the District Court erred in evaluating his complaint under the heightened pleading standard of Fed. R. Civ. P. 9(b), but this argument is foreclosed by binding Circuit precedent. Relator also argues that the District Court erred in denying his motion to remove the Department of Justice as counsel for the

United States, but this argument is simply a misplaced challenge to the statutory mandates vesting in the Attorney General authority and control over litigation in which the Government is a party or has an interest. *See, e.g.,* 28 U.S.C. §§ 514, 515, 516, 517, 518(b).

## STANDARD OF REVIEW

A district court's Rule 41 order is generally reviewable under an abuse-of-discretion standard. *Polansky*, 599 U.S. at 438. Other circuits have noted that the grant of a motion for voluntary dismissal is reviewed for abuse of discretion. E.g., *Puerto Rico Maritime Shipping Authority v. Leith,* 668 F.2d 46, 49 (1st Cir.1981) *Correspondent Servs. Corp. v. First Equities Corp. of Fla.,* 338 F.3d 119, 124 (2nd Cir. 2003); *Hyde v. Hoffmann–La Roche, Inc.*, 511 F.3d 506, 509 (5th Cir. 2007).

Some courts of appeals review *de novo* a district court's grant of a government motion to dismiss under Section 3730(c)(2)(A) of the FCA. *See Borzilleri v. Bayer Healthcare Pharm., Inc.*, 24 F.4th 32, 45 (1st Cir. 2022); *Chang v. Children's Advocacy Ctr. of Del.*, 938 F.3d 384, 386-87 (3rd Cir. 2019). However, this Court has not decided whether review is *de novo* or whether abuse-of-discretion applies. *See Credit Suisse*, 117 F.4th at 161. The decision of the District Court should be affirmed under either standard.

ARGUMENT

## I. THE DISTRICT COURT PROPERLY GRANTED THE UNITED STATES' MOTION TO DISMISS UNDER SECTION 3730(C)(2)(A) WHERE RELATOR WAS GIVEN NOTICE AND A HEARING AND OTHERWISE WAS NOT DEPRIVED OF DUE PROCESS.

The False Claims Act provides that "[t]he Government may dismiss the action notwithstanding the objections of the [relator] *if* the [relator] has been *notified by the Government of the filing of the motion* and the court has provided the person with *an opportunity for a hearing* on the motion." 31 U.S.C. § 3730(c)(2)(A) (emphasis added). The Supreme Court defined this statutory right as a "unilateral authority to dismiss . . . so long as the relator has received notice of the motion and an opportunity for a hearing." *Polansky*, 599 U.S. at 426. *Polansky* held that the Government "may seek dismissal of an FCA action over a relator's objection so long as it intervened sometime in the litigation, whether at the outset or afterward" and that "in handling such a motion, district courts should apply the rule generally governing voluntary dismissal of suits: Federal Rule of Civil Procedure 41(a)." *Id.* at 424.

The District Court's grant of the Government's motion to dismiss readily satisfies the applicable standard.

*Polansky* requires affirmance of the District Court's dismissal. In *Polansky*, the Supreme Court resolved a circuit conflict regarding the standard for reviewing

government motions to dismiss under Section 3730(c)(2)(A) of the FCA and held that Federal Rule of Civil Procedure 41(a), which governs voluntary dismissals in federal civil litigation, provides the applicable standard. *Polansky*, 599 U.S. at 435-39. As the Court explained, prior to the filing of an answer or summary judgment motion, "Rule 41 entitles the movant to a dismissal; the district court has no adjudicatory role." *Id*. at 436 n.4. The Court observed that because the FCA "requires notice and an opportunity for a hearing before a Subparagraph (2)(A) dismissal can take place," the district court "must use that procedural framework to apply Rule 41's standards." *Polansky*, 599 U.S. at 436. Under Rule 41(a)(1)(A), "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A). The Court acknowledged that application of this framework at the pre-answer stage raises the question of what purpose a hearing would serve and noted that the Third Circuit had "suggested that Rule 41's standards 'rest atop the foundation of bedrock constitutional constraints on Government action.'" *Polansky*, at 436 n.4 (quoting *Polansky v. Executive Health Res., Inc.*, 17 F.4th 376, 390 n.16 (3rd Cir. 2021)). The Court stated that a hearing, even pre-answer, therefore "might inquire into allegations that a dismissal 'violate[s] the relator's rights to due process or equal protection.'" *Id*.

Where, as here, the Government moves to dismiss a relator's action under Section 3730(c)(2)(A) before an answer or summary judgment motion is filed, the only question for the court is whether dismissal would violate "'bedrock constitutional constraints on Government action.'" *Polansky*, 599 U.S. at 436 n.4 (quoting *Polansky v. Executive Health Res.*, 17 F.4th at 390 n.16). Notably, if no "colorable claim" of a due process violation is raised, the district court may properly dismiss the *qui tam* action without an in-person hearing. *Credit Suisse*, 117 F.4th at 161-62.

1. <u>Relator Asserted No "Colorable Claim" of a Due Process Violation</u>.

Here, Relator alleged only generally and in conclusory terms that dismissal would violate his due process rights. When alleging a claim for a substantive due process violation, the plaintiff must identify a "cognizable property interest" stemming "from an independent source." *See Siena Corp. v. Mayor & City Council of Rockville Maryland*, 873 F.3d 456, 461 (4th Cir. 2017) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Relator wholly fails to do so in his brief. Instead, he simply reiterates his supposition that there must be an institutional conflict of interest because he disagrees with the DLA as to how the DIBBS program should operate, and that this conflict violates due process. App. Br. at 37-40.

Substantive due process violations, which Relator alleges also, are "far

narrower in scope than procedural due process" and require a showing that Government action "falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Plyer v. Moore*, 100 F.3d 365, 374 (4th Cir. 1996) (quoting *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 827 (4th Cir. 1995)) (emphasis in original). As this Court recently recognized: "The bar to successfully state a substantive due process claim is high. Substantive due process is a narrow protection that covers only state action which is so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Talley v. Folwell,* 133 F.4th 289, 302 (4th Cir. 2025), *cert. denied*, 146 S.Ct. 609 (2025) (quoting *Sylvia Dev. Corp.*, 48 F.3d at 827).

Given that the Government's dismissal of Relator's complaint is explicitly authorized by the FCA itself, the Government's motion to dismiss this action fell squarely within the "limits of legitimate governmental action." Additionally, the District Court held that the Government's justifications for dismissal "mirror" those approved by *Polansky* and *Credit Suisse*. JA 196. This includes the likely costs of discovery, the potential for implicating privileged information, and the assessment that Relator has a low likelihood of success (particularly given that "the Relator

provides practically no specifics on the fraud that the Defendants are allegedly committing"). *Id.* Consequently, the dismissal of the *qui tam* is not so arbitrary, irrational, or unjustified by any circumstance or governmental interest that it cannot be avoided by pre-deprivation procedural protections.

The possibility that Relator's mere disagreement as to how the DIBBS program should operate could give rise to a substantive due process claim is directly foreclosed by *Polansky's* finding that a relator's "competing assessment" of the merits of a case cannot outweigh "the Government's reasonable view of the suit's costs and benefits." 599 U.S. at 438. In this case, the Government set forth multiple reasons supporting its decision to dismiss, JA 61-62, JA 65, JA 68, JA 71 and JA 70, n.7, and cannot be said to have acted in a constitutionally arbitrary manner simply because Relator disagrees with its conclusion.

2. <u>Relator Received Notice of the Motion to Dismiss and Received a Hearing</u>.

Not only was the dismissal not arbitrary or irrational, but Relator received pre-deprivation procedural protections in any event and agreed that the hearing he received satisfies the requirement for voluntary dismissal. JA 198. Even assuming Relator alleged a constitutionally protected property interest (which he did not), Relator received all the process—and more—that was due to him before the case was dismissed.

Due process generally requires notice and an opportunity to be heard. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976); *Roth*, 408 U.S. at 570 n.7 (due process requires notice and opportunity for hearing appropriate to the nature of the case). Relator received both. On appeal, Relator argues that his rights are defined by the False Claims Act. *See* App. Br., at 12, 31 (citing due process rights vested "via the False Claims Act"). The False Claims Act expressly provides that a relator must receive notice and a hearing before dismissal upon the Government's motion. 31 U.S.C. § 3730(c)(2)(A); *see Polansky*¸ 599 U.S. at 436. As the District Court observed, Relator was granted such a hearing, and:

> At that hearing, counsel for both parties agreed that the hearing satisfied Polansky's hearing requirements for voluntary dismissal motions under Section 3730(c)(2)(A) and Rule 41(a)(1). Therefore, the court can and will dismiss this case without violating [Relator's] constitutional rights. . . . It is enough to conclude that the requirements of Polansky have been satisfied.

JA 198. *See* JA 344, JA 345.

Consequently, Relator failed to allege a constitutionally protected interest, failed to allege any deprivation of such an interest without due process, and admittedly received all process that was due, and more, before the case was dismissed. The District Court's order of dismissal should be affirmed.

## II. THE ATTORNEY GENERAL IS NOT REQUIRED TO PROVIDE "WRITTEN CONSENT" WHEN DISMISSAL IS PURSUANT TO SECTION 3730(C)(2)(A).

Relator's argument that the Attorney General was required to provide "written consent to the dismissal and [her] reasons for consenting" to dismissal is untenable. App. Br. at 39. The personal "written consent" of the Attorney General is not required for two reasons: First, the Attorney General's authority, as relevant here, can be delegated, and has been properly delegated and assigned to undersigned counsel. Second, the "written consent" requirement applies where the relator seeks to dismiss a *qui tam* complaint pursuant to Section 3730(b)(1) (governing "Actions by private persons"). The written consent required under 3730(b)(1) is not a constraint on the Government's authority to dismiss over Relator's objections pursuant to Section 3730(c)(2)(A).

Supreme Court precedent is clear that the constitutional and statutory authority vested in the Attorney General can be delegated except where "a specific limitation on that delegation authority appears elsewhere in the [relevant] statute." *Touby v. United States,* 500 U.S. 160, 169 (1991) (citing *United States v. Giordano,* 416 U.S. 505, 512-514 (1974)). As the Supreme Court noted, a statute which "merely vest[s] a duty in the Attorney General . . . evinces no intention whatsoever to preclude delegation to other officers in the Department of Justice." *Giordano,* 416

U.S. at 513.

As it pertains to this case, the Attorney General has exercised the delegation authority granted by statute and has "assigned to," and directed that all "civil claims arising from fraud on the Government . . . , including alleged claims under the False Claims Act . . . and common law fraud" shall be "conducted, handled, *or supervised* by," "the Assistant Attorney General" of the Civil Division, U.S. Department of Justice. *See* 28 U.S.C. § 510, 28 C.F.R. § 0.45 (emphasis added). This delegated authority to "supervise" False Claims Act litigation has been delegated further (as relevant in the current case) to United States Attorneys. *See* Civil Directive 1-15(b)(4) and (c)(1) contained in the Appendix to Subpart Y, Part 0 (28 C.F.R.) (delegating authority to United States Attorneys).

The "written consent" provision of Section 3730(b)(1) does not provide any "substantive constraint on the government" when it seeks dismissal under Section 3730(c)(2)(A). *Borzilleri v. Bayer Healthcare Pharms., Inc.,* 24 F.4th 32, 44 n. 9 (1st Cir. 2022). "Given the existence of § 3730(c)(2)(A) in the statutory scheme, it is clear that [Section 3730](b)(1) only applies where <u>the relator</u> moves to dismiss a suit he has brought in the government's name." *Id.* (emphasis in original) (citing *Minotti v. Lensink*, 895 F.2d 100, 104 (2nd Cir. 1990) (per curiam) ("[T]he consent provision ensures that legitimate claims against an alleged wrongdoer are not

dismissed before the United States has been notified of the claims or has had an opportunity to proceed with the action.”)).

The Supreme Court’s *Polansky* decision and this Court’s decision in *Credit Suisse* further confirm the correctness of *Borzilleri.* As the District Court explained below:

> In establishing the standards for dismissal under 31 U.S.C. § 3730(c)(2)(A), the Supreme Court and the Fourth Circuit both describe the significant deference owed to the Government. They do not mention any role played by the Attorney General in that process. In neither Polansky nor Doe did the Attorney General provide her written, reasoned consent to the dismissal sought by the United States. . . . [B]oth the Fourth Circuit and Supreme Court granted the dismissals in those cases, pursuant to Section 3730(c)(2)(A), without any written reasoned consent by the Attorney General. To require such consent today would undermine the decisions in Polansky and Doe and would, in effect, operate as an end-run around the lenient standard of review imposed by those decisions.

JA 251 (emphasis in original). Relator has not shown any error in the well-reasoned analysis of the District Court. He ignores *Polansky* and *Doe* and simply posits that the law should be otherwise based on nothing more than his supposition. App. Br. at 48. He identifies no case in which any court has ever held that the “written reasons” provision of Section 3730(b)(1) should be applied to dismissal under Section 3730(c)(2)(A), and the Government is aware of none.

## III. THE DISTRICT COURT SHOULD BE AFFIRMED ON THE ALTERNATIVE BASIS THAT THE COMPLAINT FAILED TO ALLEGE WITH THE PARTICULARITY REQUIRED BY FED. R. CIV. P. 9(B) THAT THE GOVERNMENT WAS A VICTIM OF FRAUD.

The District Court determined that, in addition to the Government's express and unilateral right to dismiss a *qui tam* action brought on its behalf, dismissal was also appropriate here for alternative reasons. JA 181. In doing so, the District Court ruled that the action was subject to dismissal because Relator failed to satisfy the pleading requirements of Rule 9(b), Fed. R. Civ. P. JA 201, *et seq.*

Relator does not dispute any of the deficiencies found by the District Court. Rather, without citing any authority, Relator contends in a single paragraph that the "district court erred as a matter of law when dismissing the case . . . [for failure] to satisfy Rule 9(b)'s heightened pleading requirements for fraud cases." App. Br., at 51. Relator's contention is entirely unsupported by existing law, and he makes no attempt to argue that existing law should be modified or reversed. Notably, the District Court's opinion, from which Relator appeals, cites several opinions from this Court stating that Rule 9(b) governs FCA pleading requirements. *See* JA 201-202, JA 206, JA 208-209 (citing cases).

Just last year, this Court held that "all claims arising under Sections 3729(a)(1)(A) and (B) of the False Claims Act . . . are based on allegations of fraud and must, therefore, satisfy the heightened pleading standard of Federal Rule of Civil

Procedure 9(b)." *United States ex rel. Wheeler v. Acadia Healthcare Co., Inc.*, 127 F.4th 472, 485 (4th Cir. 2025). The *Wheeler* court went on to explain:

> Rule 9(b) requires a plaintiff alleging fraud or mistake, like a False Claims Act whistleblower, to state with particularity the circumstances constituting fraud or mistake, though knowledge may be alleged generally. These circumstances are often referred to as the "who, what, when, where, and how" of the alleged fraud.

*Wheeler*, 127 F.4th at 485 (cleaned up) (citations omitted); *see also United States ex rel. Owens v. First Kuwaiti General Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) ("Rule 9(b) plays an especially important role in the context of FCA *qui tam* actions. . . . [T]he complaint must give the government adequate information about the nature of the suit to investigate and decide whether to intervene").

Indeed, this Court has repeatedly recognized the applicability of Rule 9(b) to False Claims Act cases. *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (holding that a complaint alleging FCA violations must "state with particularity the circumstances constituting [the] fraud," meaning the "'who, what, when, where, and how' of the alleged fraud."); *United States ex rel. Szymoniak v. American Home Mortgaging Serv., Inc.*, 679 F. App'x 299, 301 (4th Cir. 2017) (per curiam) (applying Rule 9(b)'s requirement to identify fraud with particularity to FCA claims); *United States ex rel. Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015) (holding that FCA allegations "must, at a minimum, describe the time,

place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."); *United States ex rel. Nathan v. Takeda Pharmaceuticals N. Amer., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013) (same). Dismissal of this case pursuant to Rule 9(b) was proper.

Relator argues that "the Government did not raise the issue of Rule 9 pleading standards, and the Relator did not have a fair opportunity to defend the issue on the merits," App. Br. at 51, but the record clearly indicates otherwise. *See* JA 70. The District Court made clear that the Government raised Relator's failure to state a plausible cause of action in its briefing:

> The United States presents an additional basis to dismiss the Relator's COMPLAINT that the Court must address. That argument rests on the traditional motion-to-dismiss framework under Federal Rules of Civil Procedure 12(b)(6) and 9(b). ECF No. 40, at 14 n.7.

JA 201. Further, the District Court expressly stated that Relator had opportunities to address the Government's merits argument but failed to do so: "[Relator] never directly addresses the United States' Rule 9(b) arguments in any of his briefs." JA 203, n. 25. *See also* JA 320-323. Relator also did not respond to the Rule 9(b) arguments at oral argument before the District Court. *See* JA 326.

To the extent Relator seeks a remand because he "did not have a fair opportunity to defend the issue on the merits," Relator did not preserve the issue for appeal. "Generally, issues that were not raised in the district court will not be

addressed on appeal." *Holland v. Big River Mins. Corp.*, 181 F.3d 597, 605 (4th Cir. 1999) (citing *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). "Exceptions to this general rule are made only in very limited circumstances, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993) (citing *Nat'l Wildlife Fed.,* 899 F.2d 313, 318 (4th Cir. 1988)).

The District Court correctly held that Relator "fail[ed] to meet [a complaint's merits-based]] standard on *several* fronts." JA 203 (emphasis added). The District Court correctly found that Relator failed to state "'what' false claims occurred, 'who' made them, and 'when' those false claims were made to the DLA." JA 212. *See* JA 9-12.

For the foregoing reasons, the judgment of the District Court should be AFFIRMED because the Government fully complied with all requirements of 31 U.S.C. §§ 3730(c)(2)(A). Alternatively, the District Court's dismissal should be AFFIRMED because Relator failed to comply with Rule 9(b).

## IV. THE DISTRICT COURT PROPERLY DENIED RELATOR'S MOTION TO REMOVE THE UNITED STATES AS A PARTY AND THE ATTORNEY GENERAL AS COUNSEL.

Without citing any meaningful standard by which such an argument could be evaluated, Relator argues that due process requires a "disinterested prosecutor" in

FCA *qui tam* cases, App. Br. at 15, but he fails to identify any basis on which to find that the United States, the Attorney General, or the Department of Justice have a "conflict of interest." *See* JA 161-162, JA 203 ("no conflict of interest exists in this case;" the Court "has already held that a conflict of interest does not exist"). Relator's brief sets forth no basis for a finding of a conflict involving the DLA or the Department of Justice except that the DLA views the applicable law and the operation of the DIBBS program differently from Relator, and the Department of Justice represents the DLA.[1] App. Br. at 19-20. The District Court's finding of "no conflict" is plainly correct. Other district courts have similarly allowed the United States to exercise its dismissal prerogative pursuant to section 3730(c)(2)(A) when a relator's allegations squarely challenge agency policies or conduct. *See, e.g., United States ex rel. Jackson v. Ventavia Research Group, LLC, et al.*, 744 F.Supp.3d 676, 689 (E.D. Tex. 2024) (granting Government's motion to dismiss and rejecting "Relator's conjecture" that dismissal reflected "lack o[f] political will" and concluding that "Relator's differing perspective" challenging the U.S. Food and

[1] This supposed institutional conflict among federal agencies is the only basis for removal of the Department of Justice argued by the Relator on appeal. The relator argued at times in the District Court that a personal conflict existed on the part of Department of Justice attorneys, and the District Court properly rejected those arguments. On appeal, the relator appears to state that his argument is not about a personal conflict. App Br. at 31.

Drug Administration's position on COVID-19 vaccine data was not enough to prevent dismissal).

Relator's reliance on the concurring opinion in *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987), is misplaced. In *Young*, the district court had appointed counsel for one party in a civil case to prosecute the other party for criminal contempt arising from violations of an order in that case. *Id.* at 790-92. The Supreme Court held that it was improper for counsel to perform that dual role. *Id.* at 790. That case thus turned upon counsel's personal conflict of interest, and Relator in this case has abandoned any argument of personal conflict of interest on the part of counsel for the United States.[2] Moreover, *Young* is of no relevance here, where the Department of Justice is playing but one role - the same role it always plays - representing the interests of the United States. Relator does not argue that the Department of Justice has dual or divided loyalties; he simply disagrees with the positions taken by the United States as to the underlying facts and law and posits that those positions are nefarious.

[2] Relator also cites to *United States v. Sigillito*, 759 F.3d 913 (8th Cir. 2014), as support for removal of the Department of Justice. Like *Young*, however, that case involved a personal conflict of interest: whether a recused attorney was involved in the prosecution of the defendant. *Id.* at 928. *Sigillito* provides no support for the relator's attempt to remove the entire Department of Justice simply because Relator disagrees with the positions DOJ has taken.

*Young* does not support Relator's assertion that "[i]n this case, the Attorney General and Department of Justice . . . [have a] non-waivable and fundamental conflict of interest." App. Br., at ECF 23.

Relator does not address the District Court's detailed and correct analysis of why the United States and the Attorney General cannot be removed. Rather, he asserts unsupported premise upon premise to conclude that the judiciary has "inherent authority . . . independent of statutes" to remove the Attorney General. *See* App. Br., at 32 (statutes vesting control of litigation in which the United States is a party merely "allocate executive authority" but "do not strip judicial supervisory authority;" the United States is "disqualified by conflict" (a factual premise contrary to the District Court's factual and legal conclusions); therefore, the district court has authority to remove the Attorney General). Relator's assertion that "*Young* established that federal courts possess inherent authority to ensure disinterested representation for prosecution of law" is off point, however. The district court in *Young* had appointed a special prosecutor to pursue contempt charges, in order to vitiate the court's inherent authority to enforce *its own orders*. That ruling has nothing to do with the instant case, where the Attorney General, through her designees, is litigating the statutory interests of the United States pursuant to the authority of 28 U.S.C. § 509-510, 516. It is especially misplaced in a case under the

False Claims Act, which expressly affords litigating authority to the Attorney General.

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980), is also cited by Relator but, in fact, forecloses his argument. In that case, the Supreme Court stated that due process concerns may arise when "officials performing judicial or quasi-judicial functions" act in a non-neutral manner, but it drew an explicit contrast to prosecutors, who it found "need not be entirely 'neutral and detached,' [because] [i]n an adversary system, they are necessarily permitted to be zealous in their enforcement of the law." *Id.* at 248 (internal quotations and citations omitted). To be sure, the *Jerrico* court noted that a prosecutor may be disqualified from participating in litigation in which he has a personal interest, but also concluded that "we need not say with precision what limits there may be on a financial or personal interest of one who performs a prosecutorial function" where "the influence alleged to impose bias is exceptionally remote." *Id.* at 250. As previously noted, Relator does not even allege any personal interest on the part of Government counsel.

Relator dismisses, without analysis, the case law cited by the District Court requiring the Attorney General's control of litigation as "assum[ing] the DOJ acts as a disinterested guardian of the public fiscal interest." App. Br., at 32. Relator asserts

that he does not ask the Court "to override prosecutorial discretion" or "compel the Government to prosecute," but "seeks only a mechanism to ensure that if the Government exercises its dismissal power, that decision is made by counsel free from the institutional conflict that due process . . . forbids." *Id.* The answer to that argument is patently clear: the "mechanism" is Section 3730(c)(2)(A) which provides for notice of the Government's motion and, in this case, provided him a hearing. Relator simply objects to the District Court's well-reasoned and supported decision to dismiss the case and deny his motion to remove because no conflict of interest existed.

Finally, Relator's allegations that "[t]he Government admitted that it is participating in the scheme as described in Mr. Day's Complaint and the Department of Justice is effectively defending these violations of duly enacted procurement laws," App. Br. at 27, are incorrect. Notably, Relator does not cite to the record regarding these so-called "admissions," and for good reason, as it was the opposite of what the Government stated to the District Court. Indeed, the District Court concluded that the United States "provide[d] a strong argument that the DLA's procurement practices are, in fact, legal." JA 195. Similar factually incorrect statements alleging Government "admissions" are included elsewhere in the brief and do not merit an individual response. *See, e.g.,* App. Br. at 29 (the Government's

alleged "admission that the DLA has implemented its own system to foster the defendants' looting of the United States Treasury should have put the lower court on immediate constitutional vigil."). These efforts to cast the Government as a knowing conspirator, however, further underscore that Relator has failed to state claims under the False Claims Act, because he does not attempt to allege that the DLA was defrauded.

## CONCLUSION

For the foregoing reasons, this Court should AFFIRM the District Court's decision granting the Government's motion to dismiss and AFFIRM the District Court's denial of the motion to remove.

Respectfully submitted,

TODD W. BLANCHE
Deputy Attorney General

/s/ Robert P. McIntosh

ROBERT P. MCINTOSH
VSB No. 66113
(804) 819-7404
Assistant United States Attorney
919 East Main Street, Suite 1900
Richmond, VA 23219

STATEMENT REGARDING ORAL ARGUMENT

The district court properly granted the government's motion to dismiss, and the government does not believe that oral argument is necessary in this case. If this Court determines that oral argument would be helpful to its resolution of the appeal, however, the government stands ready to present argument.

CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(c), I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. R. App. P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P. 32(a)(5), and the type-style requirements of Fed. R. App. 32(a)(6). The word processing program (Word for Microsoft 365) used to prepare the brief reports that the brief is 7,794 words long. The brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 with Times New Roman 14-point font.

/s/ Robert P. McIntosh
Robert P. McIntosh

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. Counsel of record are registered CM/ECF users and I further certify that I electronically served the foregoing brief on counsel of record via the CM/ECF system on March 4, 2026.

/s/ Robert P. McIntosh
Robert P. McIntosh